UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PEDRO COVARRUBIAS ALVARADO,<br><br>Petitioner,<br>v.<br><br>WARDEN/FACILITY ADMINISTRATOR,<br><br>Respondent. | CASE NO. 2:26-cv-03732-LK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on pro se Petitioner Pedro Covarrubias Alvarado's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons discussed below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States in 2008 without being admitted or paroled. *Id.* at 3; Dkt. No. 7 at 1. On March 28, 2026, he was arrested by the Pottawattamie County, Iowa, Sheriff's Office for "operating while under the influence." Dkt. No.

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

7 at 1. U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations encountered him that same day "during routine Criminal Alien Program jail screenings," and placed an "Immigration Detainer – Notice of Action, Form I-247A" on him to hold for further investigation upon release from local charges. Dkt. No. 8-1 at 3.

On June 30, 2026, Petitioner was convicted of "operating under the influence-1st offense," in violation of Section 321J.2(1) of the Iowa Code, and was sentenced to 94 days of imprisonment. *Id.*; Dkt. No. 8-1 at 4.[2] On the same day, ICE served Petitioner with a Notice to Appear ("NTA") pursuant to Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, charging him as inadmissible as a noncitizen "present in the United States who has not been admitted or paroled." Dkt. No 8-2 at 2–4. Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC") on July 19, 2026, where he has been detained since. Dkt. No. 7 at 2.

On September 14, 2026, Petitioner had a bond hearing at the Tacoma Immigration Court. *Id.* Immigration Judge ("IJ") John Odell denied bond after finding Petitioner to be a danger to the community. Dkt. No. 8-3 at 2–3. Petitioner submitted a Notice of Appeal to ICE, but according to Respondent,[3] "there is no indication that Petitioner ever filed an appeal with the [Board of Immigration Appeals ("BIA")]," although "[i]t is unknown whether the BIA is experiencing a backlog and has not yet received Petitioner's appeal." Dkt. No. 7 at 2.

---

[2] The A-file submitted by Respondent states that Petitioner was sentenced to 94 "months" of incarceration, which exceeds the statutory maximum. *Compare* Dkt. No. 8-1 at 4 *with* Iowa Code § 321J.2(3)(a) (specifying that the maximum period of confinement is one year). Petitioner states that he was imprisoned for 94 days. Dkt. No. 1 at 8.

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

On October 2, 2026, Petitioner filed a habeas petition for a writ of habeas corpus. Dkt. No. 1. Respondent filed a return, Dkt. No. 6, and Petitioner filed a traverse, Dkt. No. 9.

According to the Executive Office for Immigration Review ("EOIR") Automated Case Information System, Petitioner had a Master hearing at the Tacoma Immigration Court on October 21, 2026, and was ordered removed. There is no indication in the record that Petitioner waived his appeal, and the System states that his appeal is due on November 23, 2026.

## II. DISCUSSION

Petitioner argues that (1) his detention "has become unreasonably prolonged and indefinite" because his appeal of the bond denial order makes "the deprivation of his liberty lack[] temporal certainty," and (2) his due process rights were violated because the IJ did not provide him with a constitutionally sufficient bond hearing. Dkt. No. 1 at 2. Petitioner requests an order requiring his immediate release and a declaration that his detention violates the Due Process Clause of the Fifth Amendment. *Id.* at 9–10.

Respondent argues that Petitioner's detention comports with due process and that he should be required to exhaust his administrative remedies. Dkt. No. 6 at 3–9.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its

protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion is Not Required**

Respondent contends that the Court should require Petitioner to exhaust his administrative remedies by either pursuing his bond denial appeal with the Board of Immigration Appeals ("BIA") or by filing a new bond application. Dkt. No. 6 at 7–9. Respondent argues that prudential exhaustion is appropriate because "the BIA has a special expertise in reviewing the question of whether the bond record as a whole makes it substantially unlikely that the Department [of Homeland Security] w[ill] prevail on [the petitioner's] challenge to removability." *Id.* at 8 (citation modified). Petitioner does not expressly mention exhaustion in his petition, but states that bond appeals "take an extensive amount of time . . . without a certain or foreseeable date for final

resolution," Dkt. No. 1 at 5, and that his detention during his appellate proceedings "inflict[s] continuous, irreparable, and disproportionate harm upon his United States citizen family," *Id.* at 7. He explains that his one of his minor U.S. citizen children has been "clinically diagnosed with autism," and his U.S. citizen spouse "faces psychiatric decompensation under active medical treatment." Dkt. No. 1 at 2. He attaches a "Clinical Psychological Hardship Evaluation Report" of his spouse from April 2026 in which the evaluator—a Licensed Independent Clinical Social Worker—states that Petitioner's spouse has a history of trauma and is vulnerable to "anxiety and mood dysregulation," and although his spouse "previously maintained functional stability, including consistent employment and caregiving responsibilities" for her two minor children, "there has been a marked and clinically significant exacerbation of symptoms" following Petitioner's detention in March 2026. Dkt. No. 1-1 at 8. This has resulted in "functional impairment across multiple domains, including occupational performance, financial stability, and parenting capacity." *Id.* The report adds that "[t]he impact of this situation extends to her children"; her older autistic child "has shown increased dysregulation and difficulty adapting to disrupted routines," and her younger child "has exhibited emotional distress and confusion regarding her father's absence." *Id.*

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when

requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

In light of the unique facts of this case, the Court exercises its discretion to not require exhaustion. Though Respondent argues that an appeal of a bond hearing would address Petitioner's challenge to removability, EOIR's own regulations clearly establish that bond cases "shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d). Furthermore, the IJ's decision—and the lack of detailed rationale justifying that decision—"is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26-CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). Under the facts of this case, it is also not difficult to conclude that Petitioner will suffer irreparable injury if his arguably unconstitutional detention continues while he awaits a BIA decision. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); Dkt. No. 1-1 at 8, 22 (detailing the psychological toll that Petitioner's current detention has had on his wife and young children). Under all of these circumstances, the Court waives prudential exhaustion. *See, e.g.*, *Vasquez Lopez v. Hernandez*, No. 2:26-cv-0775-TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (waiving prudential exhaustion where noncitizen presented "health and family care reasons for concluding that irreparable injury would result from requiring her to remain in custody while appealing the denial of bond to the BIA").

**C. The IJ Abused His Discretion**

Petitioner contends that the IJ abused his discretion by failing to account for "the totality of the circumstances required under Matter of Guerra" in deeming him to be a danger to the community based solely on his recent misdemeanor DUI conviction while "ignoring [his] eighteen years of continuous and uninterrupted residence in the country since 2008, his legal marriage to a United States citizen since 2017, his extensive community ties," and the hardship to his family from his confinement. Dkt. No. 1 at 2. Respondents do not defend Judge Odell's bond denial decision on the merits. *See generally* Dkt. No. 6.

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). Petitioner's allegation that Judge Odell abused his discretion when he determined that Petitioner was a danger to the community presents a mixed question of fact and law that the Court has jurisdiction to review. *Id.*

Judge Odell's bond denial decision consists solely of a checkbox form in which "Danger to Community" is checked. Dkt. No. 8-3 at 2–3. The form order does not mention the *Guerra* factors, much less consider them, or provide an explanation of the determination. Respondents make no effort to argue that the finding of dangerousness is supported by the record or that he meaningfully engaged with contrary evidence and performed the required weighing under *Guerra*.

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence to show that he is not a flight risk or a danger to the community, *see Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *8–9 (W.D. Wash. Feb. 23, 2026), the Court finds that Judge Odell abused his discretion in this case. *See Martinez*, 124 F.4th at 779. The record before the Court is wholly devoid of any indication that Judge Odell considered the *Guerra* factors in finding that Petitioner is a danger to the community, or that he considered any of the evidence submitted by Petitioner in relation to the bond hearing, including but not limited to his marriage to a U.S. Citizen and other familial ties in the United States, his employment history, and his length of residence in the United States. *See* Dkt. No. 1-1 at 10–11, 13.

For all these reasons, Judge Odell failed to accord Petitioner the process due to him, abusing his discretion and violating Petitioner's Fifth Amendment rights. *See Zhamagortsyan v. Warden, Adelanto ICE Processing Center et al.*, No. 5:26-CV-04093-DTB, 2026 WL 2876062, at *8–9 (C.D. Cal. Sept. 24, 2026) (finding due process violation and ordering release where the IJ improperly determined that petitioner was a danger to the community "without considering or discussing any distinguishable facts underlying Petitioner's single arrest for driving under the influence."); *Hernandez v. Scott*, No. C26-2549-KKE, 2026 WL 2814250, at *2 (W.D. Wash. Sept. 20, 2026) (finding that the IJ abused his discretion by finding that the petitioner was a flight risk and danger to the community where it was clear the IJ only considered the petitioner's recent DUI conviction); *Sabillon Munoz v. Scott*, No. 2:26-CV-02420-TL, 2026 WL 2694273, at *6 (W.D. Wash. Sept. 14, 2026) (finding that the evidence presented at the petitioner's bond hearing could not have supported the conclusion that the petitioner posed a danger or flight risk where the petitioner had only a pending DUI charge).[4]

[4] Because the Court resolves Petitioner's petition based on his claim that his bond hearing was constitutionally sufficient, it need not address his claim that his detention has become unconstitutionally prolonged.

**D. Remedy**

Having found a due process violation, the Court considers the appropriate remedy. Petitioner requests immediate release from custody. Dkt. No. 1 at 9. Respondents assert that Petitioner "is not entitled to immediate release or another bond hearing." Dkt. No. 6 at 7.

This is not a case where the record needs to be further developed to determine if a due process violation occurred. *See, e.g.*, *Lueth v. Scott*, No. 2:26-cv-01170-SKV, Dkt. No. 14 at 7 (W.D. Wash. May 1, 2026) (requiring exhaustion because "initiating an appeal was necessary to develop the record, to clarify the IJ's reasoning, and for the parties and this Court to discern whether any constitutional error or harm transpired."). Whether in written form or not, due process requires the IJ to set forth his reasoning at the time of the bond hearing, *Garcia-Merino v. Hernandez*, No. 26-CV-1911, 2026 WL 2137819, at *4 (W.D. Wash. July 24, 2026), and as set forth above, Petitioner's claim that his bond hearing was constitutionally deficient is unrebutted. Under these circumstances, ordering release rather than a written decision is warranted. *See, e.g.*, *Cardoza-Garcia*, 2026 WL 2294541, at *5 (ordering release following a finding that the IJ abused his discretion in finding that petitioner was a flight risk); *see also, e.g.*, *Avila Garcia v. Scott et al.*, 2:26-cv-02307-BAT, Dkt. No. 9 at 8–9 (W.D. Wash. July 23, 2026) (ordering release when "the IJ failed to provide any rationale for his alternative finding of flight risk and failed to engage whatsoever with the factors weighing for or against such a finding"); *Garcia-Merino*, 2026 WL 2137819, at *4–5 (ordering release when the IJ "fail[ed] to give any reasoned explanation for his decision and . . . fail[ed] to apply the *Guerra* factors at the hearings").

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition for a writ of habeas corpus, Dkt. No. 1, and orders as follows:

1. Respondent shall release Petitioner from custody within 24 hours under terms consistent with 1226(a) and shall return to Petitioner any personal property not required to be retained by Respondents by law; and

2. Respondent shall file a Status Report by November 10, 2026, confirming that Petitioner has been released.

Dated this 9th day of November, 2026.

Lauren King
United States District Judge